IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


U.S. TECHNOLOGY CORPORATION, et al.            PLAINTIFFS

VS.                      CIVIL ACTION NO. 5:15-cv-66(DCB)(MTP)

MISSISSIPPI DEPARTMENT OF
ENVIRONMENTAL QUALITY, et al.                  DEFENDANTS


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the Court on the Motion to Dismiss all
state law claims for lack of jurisdiction or, in the alternative,
Motion for Summary Judgment **(docket entry 30)** brought by defendants
Mississippi Department of Environmental Quality ("MDEQ"), Richard
Harrell in his official capacity, and Steven Bailey in his official
capacity; and on the Motion to Dismiss **(docket entry 32)** brought by
defendants ("MDEQ"), Richard Harrell in his official capacity, and
Steven Bailey in his official capacity.   Having carefully
considered the motions, the plaintiffs' responses, the memoranda of
the parties and the applicable law, and being fully advised in the
premises, the Court finds as follows:

The Motion to Dismiss all state law claims for lack of
jurisdiction or, in the alternative, Motion for Summary Judgment
(docket entry 30) seeks dismissal of all state law claims (Counts
4-7 of the Amended Complaint) against MDEQ and Bailey and Harrell
in their official capacities,[1] or, in the alternative, summary

---

[1] Defendants MDEQ and Harrell and Bailey in their official
capacities are sometimes referred to in this Memorandum Opinion

judgment.  The second Motion to Dismiss (docket entry 32) also seeks dismissal of those same state law claims (Counts 4-7), as well as dismissal of three additional causes of action: Count 1, in which the plaintiffs seek an injunction to compel MDEQ to permit plaintiff U.S. Technology Corporation ("UST") to re-cycle the non-treated, bagged "spent blast material" ("SBM") at an acceptable recycling facility; Count 2, in which the plaintiffs seek an injunction to compel MDEQ to accept UST's TCLP testing results showing that the SBM located at the Yazoo site is non-hazardous; and Count 3, in which the plaintiffs seek an injunction to compel MDEQ to allow the recycled SBM that is currently in the landfill to remain there.

The Eleventh Amendment bars Counts 1 through 3 against MDEQ and the individual defendants sued in their individual capacities. Neither MDEQ nor the individual defendants sued in their individual capacities can be considered "persons" for purposes of 42 U.S.C. § 1983.  Federal Rule 12(b)(1) is the appropriate vehicle for dismissal for all of the claims against the State Defendants.  See, e.g., United States v. Texas Tech Univ., 171 F.3d 279, 285 n. 9, 288 (5th Cir. 1999); Hawn v. Hughes, 2014 WL 4384236, *3 (N.D. Miss. Sept. 3, 2014); Lambert v. Kenner City, 2005 WL 53307, *2 (E.D. La. Jan. 5, 2005); Williams v. Barbour, 2009 WL 3230885, *2 (S.D. Miss. Oct. 2, 2009); Cager v. Norfolk S. R. Co., 2003 WL 1618661, *6

---

and Order as "the State Defendants."

(E.D. La. Mar. 26, 2003).

In addition, the plaintiffs' claims are properly dismissed under Rule 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a "complaint must allege 'sufficient factual matter, accepted as true, to state a claim that is plausible on its face.'" <u>Hershey v. Energy Transfer Partners, L.P.</u>, 610 F.3d 239, 245 (5th Cir. 2010)(quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id</u>. at 245 (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).  Although a court must take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff, this "tenet" is "inapplicable to legal conclusions." <u>Iqbal</u>, 556 U.S. at 678.  In other words, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." <u>Fernandez-Montes v. Allied Pilots Ass'n</u>, 987 F.2d 278, 284 (5th Cir. 1993); <u>Patton v. Bryant</u>, 2014 WL 36618, *1 (S.D. Miss. Jan. 6, 2014), <u>reconsideration denied</u>, 2014 WL 457921 (S.D. Miss. Feb. 4, 2014) <u>and aff'd</u>, 584 F.App'x 242 (5th Cir. 2014).

The Eleventh Amendment to the Constitution states "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State ...." U.S. CONST. AMEND. XI.  This immunity is "far reaching." Carpenter v. Mississippi Valley State Univ., 807 F. Supp. 2d 570, 580 (N.D. Miss. 2011).  The Eleventh Amendment guarantees that "nonconsenting States may not be sued by private individuals in federal court." Board of Trustees of the Univ. of Alabama v. Garrett, 351 U.S. 356, 363 (2001)(citations omitted).

Although the terms of the Eleventh Amendment nominally apply only to suits by "Citizens of another State," Supreme Court decisions have made clear that a State's immunity encompasses "suits by citizens against their own States." Garrett, 351 U.S. at 363; see also Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 15 (1890).  The immunity granted to the State extends also to a state agency or department and cannot be avoided by suing an arm of the state or a state agency.  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Williams v. Dallas Area Rapid Transit, 242 F.3d 315, 318 (5th Cir. 2001); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280 (1977).

Moreover, the Eleventh Amendment bars claims against states, state agencies, and state officials based on federal and state law. See Buras v. Louisiana, 2013 WL 5410466, *1 (E.D. La. Sept. 25, 2013)("Both federal and state law claims are barred from being asserted against a state in federal court.").  As declared by the

4

Supreme Court in <u>Pennhurst State School & Hospital v. Halderman</u>:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

465 U.S. 89, 106 (1984).

The Fifth Circuit has held that a plaintiff's state law claims "are not cognizable ... because state officials continue to be immunized from suit in federal court on alleged violations of state law brought under the federal courts' supplemental jurisdiction." <u>Earles v. State Bd. of Certified Public Accountants of La.</u>, 139 F.3d 1033, 1039 (5th Cir. 1998); <u>see</u> <u>also</u> <u>Mississippi Surplus Lines Ass'n v. Mississippi</u>, 384 F.Supp.2d 982, 985-86 (S.D. Miss. 2005). The Eleventh Amendment clearly reaches the plaintiffs' claims brought under federal and Mississippi state law.

As the undersigned recognized in <u>Davis v. City of Vicksburg</u>, 2015 WL 4251008, *2 (S.D. Miss. 2015), "[s]overeign immunity, available to the State of Mississippi, is also available to an arm of the state ...." MDEQ is an arm of the State of Mississippi. To determine whether an entity asserting immunity is an arm of the state, the Fifth Circuit typically uses a six factor analysis. <u>Vogt v. Bd. of Comm'rs of the Orleans Levee Dist.</u>, 294 F.3d 684, 688-89 (5th Cir. 2002); <u>Williams v. Dallas Area Rapid Transit</u>, 242

F.3d 315, 318 (5th Cir. 2001); <u>Richardson v. Southern University</u>, 118 F.3d 450, 452 (5th Cir. 1997).  These six factors are: (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of the funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to state-wide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.  <u>Williams</u>, 242 F.3d at 319.

An analysis of MDEQ under these factors leads to the conclusion that it is an arm of the State of Mississippi. <u>See</u>, <u>e.g.</u>, MISS. CODE ANN. § 49-2-1 (legislative intent); MISS. CODE ANN. § 49-2-4 ("The department shall be headed by an executive director who shall be appointed by and serve at the pleasure of the Governor.  The appointment of the executive director shall be made with the advice and consent of the Senate."); MISS. CODE ANN. § 49-2-5; MISS. CODE ANN. § 49-2-19.  <u>See also</u> <u>Gulf Park Water Company, Inc. v. Mississippi Department of Environmental Quality</u>, 59 F.3d 1241, 1995 WL 413105, *1 (5th Cir. 1995)(unpublished)("All the claims against the Mississippi Department of Environmental Quality, the Mississippi Commission on Environmental Quality, and the Mississippi Public Service Commission should have been dismissed on the basis of their Eleventh Amendment immunity, and also because none of such defendants are 'persons' within the meaning of 42

U.S.C. § 1983, which formed the jurisdictional basis of this law suit."); see also Will v. Michigan Department of State Police, 491 U.S. 58 (1989)); Frazier v. Pioneer Americas LLC, 455 F.3d 542, 547 (5th Cir. 2006)(noting that where Louisiana DEQ did not consent to removal, it did not waive its Eleventh Amendment immunity); Michigan Peat v. Regional Adm'r of Region V of U.S. E.P.A., 7 F.Supp. 2d 896, 900 (E.D. Mich. 1998)(holding that state "DEQ" was entitled to Eleventh Amendment Immunity); V-1 Oil Co. v. State of Wyo., Dep't of Envtl. Quality, 902 F.2d 1482, 1484 (10th Cir. 1990) ("The district court granted summary judgment for each defendant. DEQ and the State were dismissed because of their Eleventh Amendment immunity from suit in federal court."). The Eleventh Amendment thus bars Plaintiffs' suit against MDEQ. See Edelman v. Jordan, 415 U.S. 651, 663 (1974); Mohler v. Mississippi, 782 F.2d 1291, 1292-93 (5th Cir. 1986).

Eleventh Amendment immunity not only bars suits by private citizens against a State, it also bars suits against state officers in federal court. Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent," Hafer v. Melo, 502 U.S. 21, 25 (1991) (internal quotations omitted)(quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)); accordingly, the Eleventh Amendment bar extends to suits against state actors sued in their official capacities. KP v. LeBlanc, 627 F.3d 115, 124 (5th Cir. 2010)(citing Hutto v.

7

<u>Finney</u>, 437 U.S. 678, 700 (1978); <u>McCarthy ex rel. Travis v.</u> <u>Hawkins</u>, 381 F.3d 407, 412 (5th Cir. 2004)(Eleventh Amendment "generally precludes actions against state officers in their official capacities")).

In this case, the plaintiffs have sued not only MDEQ, but also two employees in their official capacities (defendants Bailey and Harrell). The Eleventh Amendment extends its cloak of immunity to these state officials. <u>See</u>, <u>e.g.</u>, <u>Davis v. Tarrant County, Texas</u>, 88 F.3d 214, 228 (5th Cir. 2009); <u>Chrissy F. by Medley v.</u> <u>Mississippi Dept. of Public Welfare</u>, 925 F.2d 844, 849 (5th Cir. 1991).

There are three possible exceptions to Eleventh Amendment immunity: (I) valid abrogation by Congress, (ii) waiver or consent to suit by the State, or (iii) amenability of the State to suit under the <u>Ex Parte Young</u> doctrine. None of these apply in the present suit.

Abrogation applies only if Congress unequivocally has expressed its intent to abrogate a state's sovereign immunity and is acting pursuant to a valid exercise of power. <u>See</u> <u>Seminole</u> <u>Tribe of Fla. v. Fla.</u>, 517 U.S. 44, 55 (1996). Section 1983 does not explicitly indicate Congress's intent to abrogate a state's Eleventh Amendment immunity from suit. <u>See</u> <u>Quern v. Jordan</u>, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The Fifth Circuit has stated: "There has been no Congressional abrogation of state

sovereign immunity as to claims under [Section] 1983 ...." Hines
v. Miss. Dep't of Corr., 239 F.3d 366, 2000 WL 1741624, *3 (5th Cir.
Nov. 14, 2000); Delaney v. Miss. Dept. of Pub. Safety, 2013 WL
286365, *3 (S.D. Miss. Jan. 24, 2013)("There has been no
Congressional abrogation of state sovereign immunity as to claims
under § 1981, 1983, 1985, or 1986").  Thus, abrogation does not
apply as an exception to Eleventh Amendment immunity with respect
to the plaintiffs' claims against the State Defendants.

Eleventh Amendment sovereign immunity from suit is also
waiveable, but such waiver must be clearly stated and will not be
easily implied.  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S.
261, 267 (1997); Jagnandan, 538 F.2d at 1117 (citing Edelman v.
Jordan, 415 U.S. 651, 673 (1974); Petty v. Tenn.-Mo. Bridge Comm'n,
359 U.S. 275, 276 (1959)).  "Even when a State consents to suit in
its own courts, ... it may retain Eleventh Amendment immunity from
suit in federal court."  Martinez v. Tex. Dep't of Criminal
Justice, 300 F.3d 567, 575 (5th Cir. 2002).

Although Mississippi allows certain suits against state
officials through the Mississippi Tort Claims Act ("MTCA"), the
MTCA expressly preserves the State's Eleventh Amendment immunity on
such claims brought in federal court.  The MTCA provides that
"[n]othing contained in this chapter shall be construed to waive
the immunity of the state from suit in federal courts guaranteed by
the Eleventh Amendment to the Constitution of the United States."

MISS. CODE ANN. § 11-46-5(4)(emphasis supplied); see Black v. N. Panola Sch. Dist., 461 F.3d 584, 594 (5th Cir. 2006)("The MTCA ... preserves all immunities granted by the Eleventh Amendment of the United States Constitution."); Stokes v. Ward, 132 F.3d 1455, 1997 WL 802955, *2 (5th Cir. Nov. 21, 1997)(per curiam); Bogard v. Cook, 586 F.2d 399, 410 (5th Cir. 1978).  Accordingly, it cannot be said that the State waived or consented to be sued in this Court on the plaintiffs' claims against the State Defendants.

Finally, the narrow exception to the Eleventh Amendment's prohibitions established by Ex Parte Young, 209 U.S. 123 (1908), does not apply to the claims urged by the plaintiffs.  The case of Ex Parte Young involved a challenge to a Minnesota law reducing the freight rates that railroads could charge.  A railroad shareholder claimed that the new rates were unconstitutionally confiscatory, and obtained a federal injunction against Edward Young, the Attorney General of Minnesota, forbidding him in his official capacity to enforce the state law.  When Young violated the injunction by initiating an enforcement action in state court, the circuit court held him in contempt and committed him to federal custody.  In his habeas corpus application in the Supreme Court, Young challenged his confinement by arguing that Minnesota's sovereign immunity deprived the federal court of jurisdiction to enjoin him from performing his official duties.  The Supreme Court disagreed and explained that because an unconstitutional

legislative enactment is "void," a state official who enforces that law "comes into conflict with the superior authority of [the] Constitution," and therefore is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.  The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."  Ex Parte Young, 209 U.S. at 159-60.

The logic of Ex Parte Young was motivated by a recognition of, and allegiance to, federal law as the supreme law of the United States.  See Carpenter v. Mississippi Valley State Univ., 807 F. Supp. 2d 570, 580 (N.D. Miss. 2011); Va. Office for Protection & Advocacy, 131 S.Ct. 1632, 1638, 179 L. Ed. 2d 675 (2011); Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 293, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997)("Ex Parte Young gives life to the Supremacy Clause.").  Following this logic, the premise of Ex Parte Young is clear.  The exception applies only when "relief that serves directly to bring an end to a present violation of federal law" is sought.  Papasan v. Allain, 478 U.S. 265, 278 (1986)(emphasis supplied); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 102 (1984).  Ex Parte Young is focused on cases in which a violation of federal law by a state official is ongoing, as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which

11

the relief against the state official directly ends the violation of federal law, as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation.

"[S]ince state law claims do not implicate federal rights or federal supremacy concerns, the [Ex parte] Young exception does not apply to state law claims brought against the state" and thus such claims are barred against state officials in their official capacities, as suits against the state itself. Jones v. Tyson Foods, Inc., 971 F. Supp. 2d 671, 680 (N.D. Miss. 2013); McKinley v. Abbott, 643 F.3d 403, 406 (5th Cir. 2011)(citing Pennhurst, 465 U.S. at 106 and Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)).

The test for applying Ex Parte Young is simple.  To determine whether Ex Parte Young applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Va. Office for Prot. & Advocacy v. Stewart, 131 S.Ct. 1632, 1639 (2011)(internal quotation marks omitted); see also Cantu Services, Inc. v. Roberie, 535 Fed.Appx. 342, 344-45 (5th Cir. 2013); Blount v. Mississippi Dep't of Human Servs., 2015 WL 59091, *2 (S.D. Miss. Jan. 5, 2015).  The claims in the instant matter fail that test.

12

There are two types of relief sought in the amended complaint: injunctive and monetary.  Neither satisfies <u>Ex Parte Young</u>.  The Amended Complaint continues to seek monetary damages against the State Defendants as follows:

> D. On Count 4, Fraud/Fraudulent Misrepresentation, actual and punitive damages in an amount in excess of $75,000;
>
> E.  On Count 5, Fraudulent Concealment, actual and punitive damages in an amount in excess of $75,000;
>
> F. On Count 6, Defamation Per Se, actual and punitive damages in an amount in excess of $75,000;
>
> G. On Count 7, Tortious Interference, actual and punitive damages in an amount in excess of $75,000;
>
> H. On Count 8, Deprivation Of Due Process Rights – 42 U.S.C. § 1983, preliminary and permanent injunction, and actual damages in an amount in excess of $75,000;
>
> I. On Count 9, Violation of the Dormant Commerce Clause – 42 U.S.C. § 1983, preliminary and permanent injunction, and actual damages in an amount in excess of $75,000;
>
> J.  Reasonable attorney fees, costs and interest, including punitive damages ....

Amended Complaint, pp. 21-22.

It is not enough that the plaintiffs add injunctive relief to the complaint.  The plaintiffs' Amended Complaint wrongly leaves intact the monetary relief sought against the State Defendants.  Given this, any attempt to invoke <u>Ex Parte Young</u> would be inapt.  <u>See</u>, <u>e.g.</u>, <u>Blount</u>, 2015 WL 59091, *2 (citing <u>Stewart</u>, 131 S.Ct. at 1639); <u>Carter v. Burk</u>, 2012 WL 2088924, *2 (S.D. Miss. June 8, 2012)("Clearly, [plaintiff's] § 1983 claim for the recovery of money damages from defendants in their official capacities is

13

barred by the Eleventh Amendment."). All of the actions for monetary damages against MDEQ and the official capacity claims asserted against the individual Defendants must be dismissed.

In their Amended Complaint, the plaintiffs also attempt to circumvent the Eleventh Amendment by seeking injunctive relief against MDEQ. The injunctive relief sought by the plaintiffs takes two forms. First, the plaintiffs recite separate causes of action requesting an injunction against MDEQ. Second, the plaintiffs seek injunctive relief against MDEQ in the closing prayer for relief. Neither attempt satisfies <u>Ex Parte Young</u>.

In the Amended Complaint, the plaintiffs add three causes of action for injunction against MDEQ:

> COUNT 1: INJUNCTION <u>TO COMPEL MDEQ</u> TO CONTINUE TO PERMIT UST TO RECYCLE THE NON-TREATED, BAGGED SBM MATERIAL AT AN ACCEPTABLE RECYCLING FACILITY
>
> 120. Plaintiffs incorporate each and every allegation previously set forth as if specifically rewritten herein.
>
> 121. There is a substantial likelihood that Plaintiffs will prevail on the merits of their claims, because UST's recycling procedures are scientifically proven to be safe and effective, were previously acceptable to MDEQ, and were previously agreed upon in outstanding agreements that require MDEQ to allow US to recycle the SBM.
>
> 122. If an injunction is not granted, there is a great threat of ongoing, substantial injury to Plaintiffs in the form of excessive costs, and unnecessary expenditures of other resources.
>
> 123. This substantial threat of injury outweighs any harm that could be visited upon Defendants if the injunction is not granted.
>
> 124. The injunction will not disserve the public

14

interest. To the contrary, as it currently stands, the material, which is in bags and sitting on the ground, is subject to weather and other unpredictable forces that could have negative and unpredictable impacts.

COUNT 2: INJUNCTION <u>TO COMPEL MDEQ</u> TO ACCEPT UST'S TCLP TESTING RESULTS SHOWING THAT THE SBM LOCATED AT THE YAZOO SITE IS NONHAZARDOUS, THUS ALLOWING UST TO TRANSPORT THE MATERIAL TO THE LANDFILL WHERE IT BELONGS

125. Plaintiffs incorporate each and every allegation previously set forth as if specifically rewritten herein.

126. There is a substantial likelihood that Plaintiffs will prevail on the merits of their claims because 1) Plaintiffs can show that UST's test results, which are scientifically appropriate and accurate, prove that the SBM is non-hazardous; and 2) Plaintiffs can show that MDEQ incorrectly conducted duplicate testing, in-house, that utilized the wrong chemicals, produced tainted and inaccurate results, and lead to MDEQ's incorrect conclusion that the SBM is hazardous.

127. If an injunction is not granted, there is a great threat of ongoing, substantial injury to Plaintiffs in the form of excessive costs, and unnecessary expenditures of other resources.

128. This substantial threat of injury outweighs any harm that could be visited upon Defendants if the injunction is not granted.

129. The injunction will not disserve the public interest.

COUNT 3: INJUNCTION <u>TO COMPEL MDEQ</u> TO ALLOW THE RECYCLED SBM THAT IS CURRENTLY IN THE LANDFILL TO REMAIN THERE

130. Plaintiffs incorporate each and every allegation previously set forth as if specifically rewritten herein.

131. There is a substantial likelihood that Plaintiffs will prevail on the merits of their claims, because Plaintiffs can show that all necessary and appropriate groundwater and other analyses have been completed in accordance with MDEQ's rules and regulations. These analyses reveal that, based on MDEQ's own criteria, no further action is warranted, and clean closure is

15

justified.

132. If an injunction is not granted, there is a great
threat of ongoing, substantial injury to Plaintiffs in
the form of excessive costs, and unnecessary expenditures
of other resources.

133. This substantial threat of injury outweighs any harm
that could be visited upon Defendants if the injunction
is not granted.

134. The injunction will not disserve the public
interest.

Amended Complaint, pp. 12-13 (emphasis added).

> **Prayer for Relief**. The prayer for relief incorporates
> the causes of action for injunctive relief. The amended
> complaint requests as follows:
>
> A. On Count 1, Injunction, preliminary and permanent
> injunction to compel MDEQ to allow UST to recycle the
> non-treated, bagged SBM material at an acceptable
> recycling facility;
>
> B. On Count 2, Injunction, preliminary and permanent
> injunction to compel MDEQ to accept UST's TCLP testing
> results showing that the SBM located at the Yazoo site is
> non-hazardous, thus allowing UST to transport the
> material to the landfill where it belongs;
>
> C. On Count 3, Injunction, preliminary and permanent
> injunction to compel MDEQ to allow the recycled SBM that
> is currently in the landfill to remain there;

Amended Complaint, p. 21.

It is clear from the explicit language of the plaintiffs'

Amended Complaint that the injunctive relief sought is against

MDEQ. This does not fall within the "narrow exception" carved out

by the United States Supreme Court in Ex Parte Young. Seminole

Tribe of Florida v. Florida, 517 U.S. 44, 76 (1996). The fiction

of Ex Parte Young "created an exception to Eleventh Amendment

immunity for claims for prospective relief against state officials who have been sued in their official capacities." <u>Nelson v. Univ. of Texas at Dallas</u>, 535 F.3d 318, 320 (5th Cir. 2008)(emphasis supplied).  Even if the plaintiffs had urged official-capacity claims for prospective relief (which they did not), <u>Ex Parte Young</u> still would not be satisfied in this instance.  For the <u>Ex Parte Young</u> exception to apply, even when the injunctive relief is asserted through an official capacity claim, the Court must examine: (1) the ability of the official to enforce the statute at issue under his statutory or constitutional power, and (2) the demonstrated willingness of the official to enforce the statute. <u>Okpalobi v. Foster</u>, 244 F.3d 405, 425–27 (5th Cir. 2001).  In other words, "the necessary fiction of <u>Young</u> requires that the defendant state official be acting, threatening to act, or at least have the ability to act." <u>Okpalobi</u>, 244 F.3d at 405.  "The Fifth Circuit has noted that a state official cannot be enjoined to act in any way <u>that is beyond his authority to act in the first place</u>." <u>Strong v. Livingston</u>, 2013 WL 6817095, *9 (S.D. Tex. 2013)(emphasis supplied).

"The <u>Ex Parte Young</u> doctrine does not apply to states or state agencies [because] 'the doctrine holds that acts by state officials which are contrary to federal law cannot have been authorized or be ratified by the state; and suits seeking to enjoin such wrongful and unauthorized acts are not suits against the state and a federal

court's injunction against such wrongful acts is not a judgment against the state itself.'" Wamble, 2012 WL 2088820, *5 (quoting Saltz v. Tennessee Dept. of Empl. Sec., 976 F.2d 966, 968 (5th Cir. 1992)); accord Sullivan v. Univ. of Miss. Med. Ctr., 617 F.Supp. 554, 557 (S.D. Miss. 1985); McGarry v. Univ. of Mississippi Med. Ctr., 355 F. App'x 853, 856-57 (5th Cir. 2009)(holding that plaintiff's claims were barred by the Eleventh Amendment because she sued the University of Mississippi). Applying this straightforward legal principle to the case at bar requires dismissal of the added claims for injunctive relief. Because the claim for monetary damages and the added claim for injunctive relief both are barred by the Eleventh Amendment, none of the actions asserted against MDEQ and the individual defendants in their official capacities may go forward, and dismissal of these claims is required.

In addition to the grant of immunity, neither MDEQ nor the individual defendants in their official capacities can be subject to liability under § 1983. The United States Supreme Court's decision in Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989) is conclusive. In Will, the Supreme Court held that the states, arms of the states, and even officials acting in their official capacity are not "persons" within the meaning of § 1983. Id. As a result, the plaintiffs have no § 1983 right of action against the State Defendants.

18

In conclusion, the Eleventh Amendment bars all of the plaintiffs' claims, both federal and state, against the Mississippi Department of Environmental Quality and the official capacity claims against the individual defendants.  In addition, the Mississippi Department of Environmental Quality and the individual defendants in their official capacities cannot be held liable under § 1983.  The State Defendants' Motion to Dismiss shall therefore be granted.

Accordingly,

IT IS HEREBY ORDERED that the Motion to Dismiss all state law claims for lack of jurisdiction **(docket entry 30)** brought by defendants Mississippi Department of Environmental Quality, Richard Harrell in his official capacity, and Steven Bailey in his official capacity, is GRANTED, and all state law claims are dismissed without prejudice so that the plaintiffs may pursue their claims in state court;

FURTHER ORDERED that the alternative Motion for Summary Judgment **(docket entry 30)** is therefore MOOT;

FURTHER ORDERED that the Motion to Dismiss **(docket entry 30)** brought by defendants Mississippi Department of Environmental Quality, Richard Harrell in his official capacity, and Steven Bailey in his official capacity, is GRANTED as to the state law claims, and, as stated above, all state law claims are dismissed without prejudice so that the plaintiffs may pursue their claims in

state court;

FURTHER ORDERED that the Motion to Dismiss **(docket entry 32)** brought by defendants Mississippi Department of Environmental Quality, Richard Harrell in his official capacity, and Steven Bailey in his official capacity, is GRANTED as to all federal claims, and the federal claims are dismissed with prejudice.

SO ORDERED, this the 28th day of July, 2016.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE

20